UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MGD ELECTRIC INC. and DARIUSZ DRUSZKOWSKI,<br><br>   Plaintiffs,<br><br>  v.<br><br>CHAD F. WOLF, Acting Secretary of the Department of Homeland Security<br>  and<br>KENNETH CUCCINELLI, Acting Director of the U.S. Citizenship and Immigration Services,<br><br>   Defendants. | No. 19 C 6095<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

MGD Electric Inc. filed a petition with the United States Citizenship and Immigration Services for permission to hire non-citizen Dariusz Druszkowski (Form I-140). USCIS denied the petition pursuant to regulations implementing the Immigration and Nationality Act. MGD and Druszkowski filed this action pursuant to the Administrative Procedure Act ("APA") challenging the USCIS decision. Plaintiffs and Defendants filed cross motions for summary judgment. R. 16; R. 19. Before deciding the motions, the Court requires additional briefing on the issues described below.

**Legal Standard**

"Under the APA, a court must set aside an agency determination if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law,'

or if it is 'unsupported by substantial evidence.'" *Orchard Hill Bldg. Co. v. United States Army Corps of Engineers*, 893 F.3d 1017, 1024 (7th Cir. 2018) (quoting 5 U.S.C. §§ 706(2)(A), (E)). A determination is arbitrary and capricious if it "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2016). A determination is unsupported by substantial evidence when the record lacks evidence that "a reasonable mind might accept as adequate to support the conclusion." *Id.* Under either APA standard, the scope of review is "narrow and a court must not substitute its judgment for that of the agency." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012). However, a "reviewing court should not attempt itself to make up for . . . deficiencies" in an agency's reasoning, nor "supply a reasoned basis for the agency's action that the agency itself has not given." *Zero Zone*, 832 F.3d at 668. In other words, courts "should deferentially examine an agency's work, but not rubber-stamp it." *Orchard Hill*, 893 F.3d at 1024. "The party challenging the agency action also bears the burden of proof in these cases." *Sierra Club v. Marita*, 46 F.3d 606, 619 (7th Cir. 1995); *see also Constr. & Design Co. v. U.S. Citizenship & Immigration Servs.*, 563 F.3d 593, 596 (7th Cir. 2009) ("The employer . . . bears the burden of proof.").

## Background

On July 11, 2019, MGD filed its petition with USCIS seeking permission to employ Druszkowski for annual wages totaling $79,643. MGD supported the petition with several bank statements. Six days later, USCIS responded seeking further

2

documentation of MGD's ability to pay the wage, noting that it requires "primary evidence such as annual reports, audited financial statements, or U.S. federal income tax returns." R. 15 at 2 (p. 106); *see also* 8 C.F.R. § 204.5(g)(2). MGD then responded on July 25, 2019, providing its 2018 tax return, additional bank statements, and a one-sentence statement from a certified public account that MGD could afford the wage. *See* R. 15 at 4 (p. 108).

USCIS denied the petition on July 31, 2019, making the following findings:

> Ability to pay may be established in one of three ways: 1) the petitioner has a net income equal to or greater than the proffered wage; 2) the petitioner has net current assets (defined as current assets minus current liabilities) equal to or greater than the proffered wage; 3) the petitioner has already been remunerating the beneficiary at a rate equal to or greater than the proffered wage.
>
> \*   \*   \*   \*
>
> The petitioner's 2018 Form I 120S shows the Ordinary business income (loss) as $5,095. Schedule K indicates that the net current assets is $(23,316). The federal tax return does not demonstrate that the petitioner has sufficient net income or net current assets to pay the offered wage.
>
> While the petitioner has submitted additional bank statements, these are not acceptable as evidence of ability to pay. First, bank statements are not among the types of evidence, enumerated in 8 CFR 204.5(g)(2), which are the requisite evidence of a petitioner's ability to pay a proffered wage. While this regulation allows additional material in "appropriate cases," the petitioner has not demonstrated that this required evidence is inapplicable, inaccurate, or unavailable. Second, bank statements show only the amount in an account on a given date, and cannot show the sustainable ability to pay a proffered wage. Third, no evidence was submitted to demonstrate that the funds reported on the petitioner's bank statements somehow

3

> reflect additional available funds that were not reflected on its tax returns, such as cash on Schedule L.
>
> The petitioner submitted a letter from David Robbins, CPA for Nieminski Robbins & Associates indicating that the petitioning entity has the ability to pay. However, a letter from an accountant is not evidence that the petitioner has the ability to pay.
>
> As such, the record does not demonstrate that the petitioner has the ability to pay the offered wage.

R. 14 at 14 (p. 13). Plaintiffs filed this case challenging the USCIS decision on September 11, 2019.

## Analysis

Under the relevant regulation, "[a]ny petition filed by or for an employment-based immigrant which requires an offer of employment must be accompanied by evidence that the prospective United States employer has the ability to pay the proffered wage." 8 C.F.R. § 204.5(g)(2). The regulation also provides that "[e]vidence of this ability shall be either in the form of copies of annual reports, federal tax returns, or audited financial statements." *Id*. And "in appropriate cases, additional evidence, such as profit/loss statements, bank account records, or personnel records, may be submitted by the petitioner or requested by the Service." *Id*.

However, the Seventh Circuit has noted that the regulation's requirement of annual reports, tax returns, or financial statement, puts undue emphasis on accounting records that "are not intended to tell a firm whether to hire another employee." *Construction & Design*, 563 F.3d at 595. Rather, such a decision should be made based on whether "the firm has enough cash flow, either existing or anticipated,

4

to be able to pay the salary of a new employee along with its other expenses." *Id.* If so, the company "can 'afford' that salary," for purposes of the Immigration and Nationality Act, "unless there is some reason, which might or might not be revealed by its balance sheet or other accounting records, why it would be an improvident expenditure." *Id.*

The primary question on these motions is whether USCIS abused its discretion in finding that MGD's 2018 tax return does not demonstrate its ability to pay an annual wage of $79,643. USCIS focused on the fact that the tax return shows business income of only $5,095 and current assets of negative $23,216. On their face, these numbers indicate that MGD is not able to pay the wage.

But business income and assets for tax accounting purposes do not necessarily show whether MGD has cash flow sufficient to afford the proposed wage. According to the Seventh Circuit's holding in *Construction & Design*, USCIS should have analyzed what the business income and assets listed on MGD's tax return reveal about its cash flow.

MGD's bank statements show that it consistently has positive cash flow in the tens of thousands of dollars. For the eleven-month period beginning August 2018 through June 2019, MGD had an average statement balance of $154,341; a median of $137,355; a low of $47,189; and a high of $313,408. *See* R. 15 at 54-106 (pp. 158-210). This consistent cash surplus indicates that MGD has the ability to pay what amounts to a monthly wage of $6,640.

5

But this indication in MGD's bank statements of its ability to pay Druszkowski's wage requires an explanation of why the small business income and negative current assets listed on MGD's tax return appear to indicate otherwise. Business income is calculated starting with MGD's gross receipts of $4.229 million, minus the $3.310 million cost of goods sold, to find gross profits of $918,249. *See* R. 15 at 7 (p. 111, lines 1-3). Subtracted from gross profits are deductions for expenses, such as: officer compensation; salaries and wages; repairs and maintenance; rent; taxes; interest; advertising; etc. *See id.* at 7 (p. 111, lines 7-20). But also subtracted from MGD's gross profits is a $152,728 deduction for depreciation, which is not an actual cash expense. Rather, it is a tax accounting fiction to account for "a decline in an asset's value because of use, wear, obsolescence, or age." Black's Law Dictionary (11th ed. 2019). Since depreciation is not an actual expense, it must be added back to MGD's income to show an income that is more indicative of MGD's cash flow, and hence its ability to pay the proposed wage. *See* Charles H. Meyer, ACCOUNTING AND FINANCE FOR LAWYERS IN A NUTSHELL at 12 (6th ed. 2017) ("[T]he statement of cash flows typically starts with net income and makes two adjustments. First, noncash expenses such as depreciation expense are added back to income. The depreciation deducted in computing net income does not involve any current payment of cash. It is simply an accounting allocation."); *Constr. & Design*, 563 F.3d at 595 (holding that cash flow is the relevant consideration in determining an employer's ability to pay a proposed wage). Adding $152,728 back to MGD's business income indicates the ability to pay the proposed wage.

Like its small business income, the negative current assets shown on MGD's tax return also seems to be contrary to its average of $154,341 in the bank. However, a possible explanation, reflected in the tax return, is that MGD has a non-current asset of $447,600 in "loans to shareholders." R. 15 at 10 (p. 114). Because this loan is not a current asset, it was reasonable for USCIS to disregard any potential *repayment* in determining whether MGD's assets enable it to afford to pay Druszkowski. But this loan is an explanation for where MGD's cash surplus went in 2018, and why MGD does not show greater cash assets on its tax return, despite its high average bank account balance. MGD's tax return also shows that it did not make such loans in the prior year. This indicates that in coming years, MGD could use its cash surplus to pay Druszkowski instead of making loans to shareholders.[1]

Unlike the foregoing analysis, USCIS found that MGD's bank statements did demonstrate MGD's ability to pay Druszkowski's wage because "bank statements show only the amount in an account on a given date, and cannot show the sustainable

---

[1] Plaintiffs also argue that its total assets of $575,492 demonstrate that MGD can afford Druszkowski's wage. *See* R. 15 at 10 (p. 114, line 15). But the majority of those assets are not current assets, but rather equipment and property that cannot readily be converted to cash and used to pay a wage. *See Black's Law Dictionary* (11th ed. 2019) (defining a "current asset" as "[a]n asset that is readily convertible into cash, such as a marketable security, a note, or an account receivable"); *In re Doctors Hosp. of Hyde Park, Inc.*, 507 B.R. 558, 660 (Bankr. N.D. Ill. 2013) ("The standard definition of 'current assets' is 'cash and other assets or resources commonly identified as those which are reasonably expected to be realized in cash or sold or consumed during the normal operating cycle of the business.'" (quoting *In the Matter of Penn Central Transp. Co.,* 570 F.2d 1189, 1196 n. 14 (3d Cir. 1978) (*citing* AMERICAN INSTITUTE OF CERTIFIED PUBLIC ACCOUNTANTS, *Accounting Research Bulletin No. 43*, at 20 (1961))). Furthermore, that asset total is offset by $636,397 in liabilities. *See id.* at 46 (p. 150). Thus, Plaintiffs' reliance to MGD's total assets of $575,492 is unavailing.

ability to pay a proffered wage." R. 14 at 14 (p. 13). But MGD submitted eleven consecutive months of bank statements, showing an average balance of $154,341. While one bank statement would probably be insufficient to demonstrate "the sustainable ability to pay," eleven consecutive statements seems sufficient. USCIS also found that MGD did not submit evidence "to demonstrate that the funds reported on [its] bank statements somehow reflect additional available funds that were not reflected on its tax returns, such as cash[.]" *Id.* But the Court's analysis of MGD's 2018 tax return shows the "additional available funds" USCIS missed. If the Court's analysis of MGD's 2018 tax return is correct, USCIS should have been able to perform the same analysis, even without additional evidence or express argument from MGD. The tax return and bank statements, when analyzed together, speak for themselves.

## Conclusion

The Court would like Defendants to respond to the analysis in this opinion and order before the Court rules on the cross motions. Defendants should file a response of no more than ten pages by June 5, 2020. Plaintiffs should file a reply of no more than five pages by June 22, 2020.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: May 1, 2020